IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ANDRE MURRAY, | : | |
| | : | |
| Petitioner, | : | |
| | : | |
| v. | : | Civil Action No. 21-1440-GBW |
| | : | |
| BRIAN EMIG, Warden, and ATTORNEY GENERAL OF THE STATE OF DELAWARE, | : | |
| | : | |
| Respondents.[1] | : | |

# MEMORANDUM OPINION[2]

Andre Murray. *Pro se* Petitioner.

Elizabeth R. McFarlan, Deputy Attorney General of the Delaware Department of Justice, Wilmington, Delaware. Attorney for Respondents.

November 14, 2024
Wilmington, Delaware

---

[1] The Court has substituted Warden Brian Emig for former Warden Robert May, an original party to this case. *See* Fed. R. Civ. P. 25(d).

[2] This case was re-assigned to the undersigned's docket on September 8, 2022.



Williams, District Judge:

Presently pending before the Court is Petitioner Andre Murray's ("Petitioner") Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254. (D.I. 1) The State filed an Answer in opposition. (D.I. 13) For the reasons discussed, the Court will deny the Petition.

## I. BACKGROUND

In October 2017, a Wilmington police officer on patrol observed Petitioner walking suspiciously down a sidewalk. *See State v. Murray*, 2020 WL 7624853, at *1 (Del. Super. Ct. Dec. 22, 2020). The police officer approached Petitioner and eventually seized a firearm that Petitioner was carrying in his waistband. *See id.*

> On November 11, 2017, a grand jury indicted [Petitioner] on charges of Carrying a Concealed Deadly Weapon ("CCDW"), Possession of a Firearm by a Person Prohibited ("PFBPP"), and Possession of Ammunition by a Person Prohibited ("PABPP"). On January 16, 2018, Defendant, represented by Ross Flockerzie, Esq., pled not guilty to these charges.
>
> On February 2, 2018, [Petitioner] moved to suppress the seized firearm. Through Attorney Flockerzie, [Petitioner] argued that "his detention and subsequent search violated his rights under the Fourth Amendment to the United States Constitution" and other provisions of law. More specifically, [Petitioner] asserted that he was subjected to "an illegal investigatory detention ... without reasonable articulable suspicion that he had committed or was about to engage in criminal activity." On March 29, 2018, after a suppression hearing, the Superior Court granted [Petitioner's] motion. On April 9, 2018, the State moved

> for reargument, but on July 26, 2018, the Superior Court denied the motion.
>
> On August 16, 2018, the State appealed the Superior Court's decision to the Delaware Supreme Court. On July 10, 2019, the Supreme Court reversed, finding that Officer Rosaio "performed a legitimate *Terry* stop," which was supported by "specific and articulable facts giving rise to his suspicion that [Petitioner] was carrying a concealed deadly weapon." On February 14, 2020, Defendant pled guilty to the CCDW charge, the State having *nolle prossed* the PFBPP and PABPP charges in accordance with the plea agreement. The Court immediately sentenced [Petitioner] to 8 years at Level V, with credit for 180 days previously served, followed by 6 months at Level III. [Petitioner] was also declared a Habitual Offender pursuant to 11 *Del. C.* § 4214 (a) and (c).

*Murray*, 2020 WL 7624853, at *1. Petitioner did not appeal his conviction or sentence to the Delaware Supreme Court.

On October 28, 2020, Petitioner filed a *pro se* motion for post-conviction relief pursuant to Delaware Superior Court Criminal Rule 61 ("Rule 61 motion") and a motion to appoint counsel. (D.I. 12-1 at Entry Nos. 48, 49; D.I. 12-11) The Superior Court denied the Rule 61 motion and the motion to appoint counsel on December 22, 2020. (D.I. 11-1 at Entry No. 51; D.I, 12); *see Murray*, 2020 WL 7624853, at *2-3.

On January 6, 2021, Petitioner sought an extension of time to amend his Rule 61 motion and, on January 15, 2021, moved for reconsideration of the Superior Court's order denying his Rule 61 motion. (D.I. 11-1 at Entry Nos. 52,

2

53) The Superior Court denied the motion for an extension of time as moot, and declined to reconsider its December 22, 2020 order. (D.I. 12-1 at Entry No. 54; D.I. 12-14 at 4-5) Petitioner appealed. On July 30, 2021, the Delaware Supreme Court affirmed the Superior Court's judgment. *See Murray v. State*, 257 A.3d 1022 (Table), 2021 WL 3280496, at *1 (Del. July 30, 2021).

## II. GOVERNING LEGAL PRINCIPLES

### A. The Antiterrorism and Effective Death Penalty Act of 1996

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "to reduce delays in the execution of state and federal criminal sentences . . . and to further the principles of comity, finality, and federalism." *Woodford v. Garceau*, 538 U.S. 202, 206 (2003). Pursuant to AEDPA, a federal court may consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Additionally, AEDPA imposes procedural requirements and standards for analyzing the merits of a habeas petition in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).

## B. Exhaustion and Procedural Default

Absent exceptional circumstances, a federal court cannot grant habeas relief unless the petitioner has exhausted all means of available relief under state law. *See* 28 U.S.C. § 2254(b); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842-44 (1999); *Picard v. Connor*, 404 U.S. 270, 275 (1971). AEDPA states in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that –
>
> (A) the applicant has exhausted the remedies available in the courts of the State; or
>
> (B)(i) there is an absence of available State corrective process; or (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1). This exhaustion requirement, based on principles of comity, gives "state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 844-45; *see Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000).

A petitioner satisfies the exhaustion requirement by demonstrating that the habeas claims were "fairly presented" to the state's highest court, either on direct appeal or in a post-conviction proceeding, in a procedural manner permitting the court to consider the claims on their merits. *See Bell v. Cone*, 543 U.S. 447, 451

4

n.3 (2005); *Castille v. Peoples,* 489 U.S. 346, 351 (1989). If a petitioner raised the issue on direct appeal in the correct procedural manner, the claim is exhausted and the petitioner does not need to raise the same issue again in a state post-conviction proceeding. *See Lambert v. Blackwell,* 134 F.3d 506, 513 (3d Cir. 1997).

If a petitioner presents unexhausted habeas claims to a federal court, and further state court review of those claims is barred due to state procedural rules, the federal court will excuse the failure to exhaust and treat the claims as exhausted. *See Coleman v. Thompson,* 501 U.S. 722, 732, 750-51 (1991) (such claims "meet[] the technical requirements for exhaustion" because state remedies are no longer available); *see also Woodford v. Ngo,* 548 U.S. 81, 92-93 (2006). Such claims, however, are procedurally defaulted. *See Coleman,* 501 U.S. at 749; *Lines v. Larkins,* 208 F.3d 153, 160 (3d Cir. 2000). Similarly, if a petitioner presents a habeas claim to the state's highest court, but that court "clearly and expressly" refuses to review the merits of the claim due to an independent and adequate state procedural rule, the claim is exhausted but procedurally defaulted. *See Coleman,* 501 U.S. at 750; *Harris v. Reed,* 489 U.S. 255, 260-64 (1989).

Federal courts may not consider the merits of procedurally defaulted claims unless the petitioner demonstrates either cause for the procedural default and actual prejudice resulting therefrom, or that a fundamental miscarriage of justice will result if the court does not review the claims. *See McCandless v. Vaughn,* 172

F.3d 255, 260 (3d Cir. 1999); *Coleman,* 501 U.S. at 750-51. To demonstrate cause for a procedural default, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier,* 477 U.S. 478, 488 (1986). To demonstrate actual prejudice, a petitioner must show that the errors during his trial created more than a possibility of prejudice; he must show that the errors worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 494.

Alternatively, if a petitioner demonstrates that a "constitutional violation has probably resulted in the conviction of one who is actually innocent,"[3] then a federal court can excuse the procedural default and review the claim in order to prevent a fundamental miscarriage of justice. *See Edwards v. Carpenter,* 529 U.S. 446, 451 (2000); *Wenger v. Frank,* 266 F.3d 218, 224 (3d Cir. 2001). The miscarriage of justice exception applies only in extraordinary cases, and actual innocence means factual innocence, not legal insufficiency. *See Bousley v. United States,* 523 U.S. 614, 623 (1998); *Murray,* 477 U.S. at 496. A petitioner establishes actual innocence by asserting "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical

---

[3] *Murray,* 477 U.S. at 496.

6

evidence—that was not presented at trial," showing that no reasonable juror would have voted to find the petitioner guilty beyond a reasonable doubt. *See Hubbard v. Pinchak*, 378 F.3d 333, 339-40 (3d Cir. 2004).

## III. DISCUSSION

Petitioner's timely-filed Petition asserts the following three Claims: (1) appellate counsel provided ineffective assistance by failing to appeal the Delaware Supreme Court's reversal of the Superior Court's decision to suppress the firearm seized during the pedestrian stop of Petitioner (D.I. 1 at 3); (2) the Delaware Supreme Court lacked jurisdiction to hear the State's interlocutory appeal of the Superior Court's decision to suppress the firearm, thereby violating Petitioner's rights to equal protection and due process (D.I. 1 at 4); and (3) the Delaware Supreme Court violated Petitioner's Fourth Amendment rights when it reversed the Superior Court's decision to suppress the firearm (D.I. 1 at 7).

### A. Claim One: Ineffective Assistance of Appellate Counsel

Petitioner raised Claim One to the Delaware Supreme Court on post-conviction appeal without first presenting it to the Superior Court in his Rule 61 motion. Consequently, the Delaware Supreme Court reviewed the argument for plain error under Delaware Supreme Court Rule 8 and denied relief. *See Murray*, 2021 WL 3280496, at *1 & n.2.

It is well-settled that Delaware Supreme Court Rule 8 constitutes an independent and adequate state ground precluding federal habeas review absent a showing of cause for the default and prejudice resulting therefrom, or absent a showing that a miscarriage of justice will occur if the claims are not reviewed. *See Campbell v. Burris*, 515 F.3d 172, 179-82 (3d Cir. 2008). By denying Claim One under the plain error standard, the Delaware Supreme Court plainly stated that its decision rested on state law grounds and that it was enforcing Petitioner's procedural default. Thus, the Court cannot review the merits of Claim One absent a showing of cause and prejudice, or a miscarriage of justice.

Petitioner does not explicitly assert any cause for his failure to present Claim One to the Superior Court in his Rule 61 motion. Petitioner, however, states that he filed an amended Rule 61 motion on December 18, 2020 and he was unaware that the Superior Court denied the original Rule 61 motion on December 22, 2020. (D.I. 1 at 2) To the extent this statement should be viewed as an attempt to establish cause for his default by blaming the Superior Court for denying his request to amend his Rule 61 motion after that court had denied his Rule 61 motion, it is unavailing. As an initial matter, the record contradicts Petitioner's assertion that he filed an amendment on December 18, 2020 and, instead, reveals that he filed a motion for an extension of time to file an amendment to his Rule 61 motion on January 6, 2021. (D.I. 12-1 at Entry Nos. 52 & 53) Additionally, Claim

8

One was fully available to Petitioner when he filed his Rule 61 motion, and no external factor impeded Petitioner's ability to comply with the state court's procedural rule and include Claim One in his Rule 61 motion in the first place. The Superior Court also was not required to re-open the Rule 61 motion to consider a claim that Petitioner could have, but did not, include in his Rule 61 motion. Thus, Petitioner's failure to comply with Delaware's procedural rule cannot establish cause for his failure to comply with AEDPA's exhaustion requirement.

While Petitioner's failure to demonstrate cause obviates the need to address the issue of prejudice, Petitioner also cannot establish that he will be prejudiced if the Court does not review the merits of Claim One. A claim asserting pre-plea ineffective assistance of counsel not relating to the acceptance of the plea is waived by the plea. *See Lewis v. Metzger*, 2018 WL 4804701, at *4 (D. Del Oct. 4, 2018). Importantly, Claim One asserts that appellate counsel was ineffective for not filing an appeal from the Delaware Supreme Court's decision reversing the Superior Court's decision to suppress evidence; it does not attack the voluntary nature of Petitioner's plea, nor does it assert that Petitioner asked, and appellate counsel refused, to file an appeal from his guilty plea and resulting sentence. Consequently, Petitioner waived his instant challenge to the disposition of his suppression motion by entering a voluntary guilty plea.

9

Additionally, as appellate counsel noted in her July 27, 2020 letter to Petitioner when explaining why she did not appeal the Delaware Supreme Court's reversal of the Superior Court's suppression decision, there is only one supreme court in Delaware, and that state supreme court had already adjudicated the suppression motion against him. (D.I. 1-2 at 2) In other words, Petitioner suffered no prejudice by appellate counsel's failure to challenge on direct appeal a suppression issue that the Delaware Supreme Court had already decided against Petitioner.

Finally, the miscarriage of justice exception does not excuse Petitioner's procedural default because he has not provided new reliable evidence of his actual innocence. Accordingly, the Court will deny Claim One for being procedurally barred.

## B. Claim Two: Delaware Supreme Court Lacked Jurisdiction

In Claim Two, Petitioner asserts the Delaware Supreme Court lacked jurisdiction to consider the State's appeal from the Superior Court's decision to suppress the evidence, because the State failed to properly certify its interlocutory appeal as required by 10 Del. C. § 9902(b).

It is well-established that "[s]tate courts are the ultimate expositors of state law,"[1] and claims based on errors of state law are not cognizable on habeas review. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Claim Two asserts an error of state law. Therefore, the Court will deny Claim Two for failing to assert a proper basis for federal habeas relief.

**C. Claim Three: Fourth Amendment Violation**

In his final Claim, Petitioner contends that the Delaware Supreme Court violated his Fourth Amendment rights by reversing the Superior Court decision granting his motion to suppress the evidence. The State properly argues that the Court is barred from considering the merits of this Fourth Amendment argument under the doctrine established in *Stone v. Powell*, 428 U.S. 465, 494 (1976). In *Stone*, the Supreme Court held that federal courts cannot provide habeas review of Fourth Amendment claims if the petitioner had a full and fair opportunity to litigate Fourth Amendment claims in the state courts. *Id.*; *see Wright v. West*, 505 U.S. 277, 293 (1992) ("We have also held . . . that claims under *Mapp* [alleging evidence obtained in violation of the Fourth Amendment] are not cognizable on habeas as long as the courts have provided a full and fair opportunity to litigate them at trial or on direct review."). A petitioner has had a full and fair opportunity

---

[1] *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975).

11

to litigate such claims if the state has an available mechanism for suppressing evidence seized in or tainted by an illegal search or seizure, irrespective of whether the petitioner actually availed himself of that mechanism. *See Boyd v. Mintz*, 631 F.2d 247, 250 (3d Cir. 1980); *U.S. ex rel. Hickey v. Jeffes*, 571 F.2d 762, 766 (3d Cir. 1978); *Petillo v. New Jersey*, 562 F.2d 903, 906-07 (3d Cir. 1977). Conversely, a petitioner has not had a full and fair opportunity to litigate a Fourth Amendment claim and, therefore, avoids the *Stone* bar, if the state system contains a structural defect that prevented the state from fully and fairly hearing his Fourth Amendment claims. *See Marshall v. Hendricks*, 307 F.3d 36, 82 (3d Cir. 2002).

Here, the record reveals that Petitioner had a full and fair opportunity to litigate his Fourth Amendment claim. He filed a pre-trial motion to suppress the firearm obtained during the police officer's pedestrian stop. The Superior Court granted the motion, but the Delaware Supreme Court reversed that decision on interlocutory appeal. Petitioner raised the suppression issue again in his Rule 61 motion and in his Rule 61 appeal (D.I. 12-11 at 6; D.I. 12-13 at 10-14), and the Superior Court and Delaware Supreme Court denied the argument as procedurally barred. *See Murray*, 2020 WL 7624853, at *2; *Murray*, 2021 WL 3280496, at *1. Notably, even if the Delaware Supreme Court's decision to reverse the Superior Court's decision was erroneous, Petitioner still had a "full and fair" opportunity to litigate his Fourth Amendment claim. *See, e.g., Marshall*, 307 F.3d at 82 (holding

12

that "[a]n erroneous or summary resolution by a state court of a Fourth Amendment claim does not overcome the [*Stone*] bar."); *Gilmore v. Marks*, 799 F.2d 51, 57 (3d Cir. 1986).

Accordingly, the Court will deny Claim Three as barred by *Stone*.

## IV. CERTIFICATE OF APPEALABILITY

A district court issuing a final order denying a § 2254 petition must also decide whether to issue a certificate of appealability. *See* 3d Cir. L.A.R. 22.2 (2011); 28 U.S.C. § 2253(c)(2). A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *see also Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Additionally, when a district court denies a habeas claim or petition on procedural grounds without reaching the underlying constitutional claims, the court is not required to issue a certificate of appealability unless the petitioner demonstrates that jurists of reason would find it debatable: (1) whether the claim or petition states a valid claim of the denial of a constitutional right; and (2) whether the court was correct in its procedural ruling. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The Court has concluded that the instant Petition does not warrant relief. Reasonable jurists would not find this conclusion to be debatable. Thus, the Court

13

will not issue a certificate of appealability.

## V. CONCLUSION

For the reasons discussed, the Court will deny the instant Petition without holding an evidentiary hearing or issuing a certificate of appealability. The Court will enter an order consistent with this Memorandum Opinion.